FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 JUL 23 AM 9: 25

CLERK /hw/
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ARLENE PERRIER, Individually and as
Administratrix of the Estate of Orville Wayne
Perrier, deceased,

Plaintiff,

v.    406CV227

JOSE GONZALEZ, MT TRANSPORTATION
AND LOGISTICS SERVICES and LINCOLN
GENERAL INSURANCE COMPANY,

Defendants.

## ORDER

In 2006 Orville (or Oliver) Wayne Perrier perished in a Glynn county, Georgia, motor vehicle/semi-tractor collision. Doc. # 20 at 1. Defendant Jose Gonzales, the truck's driver, disputed liability in a wrongful death case brought against him, his employer, and his employer's insurer by Orville's wife, Arline (or Arlene) Perrier.[1] *Id*; *see also* doc. # 1 (attached Complaint).

Arline is administering Orville's estate. Doc. # 20. The parties settled this case on 4/26/07. Doc. # 17. The Court retained jurisdiction to enforce any settlement agreement the parties wished to file within 30 days of judgment. *Id.*

On 5/24/07, Jacqueline Perrier, mother and next friend of Kurtley Lionel Perrier (a minor child); Juliet Marie Wilson, mother and next friend of Shaudia Araina Perrier (also a minor child) and Marcia Daley, mother and next friend of Christina Rose Marla Perrier (minor), F.R.Civ.P. 24(a)-moved to intervene to protect the interests of Orville's children (Kurtley, Shaudia and Christina). Doc. # 18 at 1.

The Intervenors noted that Arline owes the children a fiduciary duty. *Id.* at 2 (*citing Home Insurance v. Wes*, 229 Ga. App. 220-222 (1997) ("In a wrongful death case, the surviving spouse acts as the childrens' representative and owes them a duty to act prudently and, asserting, prosecuting and settling the claim and to act in

---

[1] It's always helpful when counsel furnish the Court with the complete, accurate names of the parties. *Compare* doc. # 20 at 1 (caption spelling plaintiff's name as "Arline") *with* # 27 (caption spelling plaintiff's name as "Arlene"); *compare* doc. # 18 (caption referring to an "Orville" Wayne Perrier) *with id.* at 1 ¶ 2 ("Oliver" Wayne Perrier). This is not the first time that the Court has had to struggle with building-block level information in a case. *See, e.g., Palmer v. Simmons*, 604CV075, doc. # 132 at 1 (S.D.Ga. 2/21/07) (unpublished) (directing counsel to confirm the proper spelling of his client's name); *Brown v. Johnson*, 603CV071, doc. # 142 at 2 n. 1 ("The Court thus directs attorneys and MJ's in these cases to promptly ascertain those full names and place them on the caption at the start of these cases"). A Court's final judgment obviously will suffer if the parties cannot be verified. *See, e.g., Brown*, doc. #142 at 1-2 (explaining that the Court cannot enter judgment for "Dr. Jones" but instead requires the doctor's *full* name).

Because this problem is now routinely creeping up in cases before this Court, some practice tips are in order. First, all counsel should pause and ask their client: "What is your name?" Then counsel should ask: "How do you spell it?" Finally, counsel should pay close attention to the way opposing parties' names are spelled and, absent clear evidence of a typographical mistake, employ the same spelling in their filings.

That way, the Court won't have to *guess* at these things. Here the Court will guess that Arline is the proper spelling for the plaintiff in this case, and that Orville is the name of the decedent. But absent settlement of this matter, counsel are directed to promptly correct the Court otherwise, and the caption to this case shall then be revised accordingly on all further filings (hence, leave is granted to correct the caption to any future filings, and call that to the Court's attention at the time).

the utmost good faith")); *see also* O.C.G.A § 51-4-2; S.D.GA.LOC.R. 17.1. Arline, they claimed, had not cooperated with them in ensuring that she upheld that duty. *Id.* at 2-3.

The Court granted their motion and indicated that it would schedule a Rule 17.1 hearing before any monies are dispersed. Doc. # 19. Arline has since moved to disburse the settlement funds. Doc. ## 20, *as amended*, 26. She discloses that she and Orville had no children, but he fathered a total of six children with other women. Three of them are the above-mentioned minors and three are adults.[2] All are would-be beneficiaries of the *Gonzalez* litigation. Doc. # 20 at 1-2.

The underlying litigation here, Arline insists, was not a slam-dunk liability-wise, and Gonzalez's employer's insurance was basically the only judgment-collection source. *Id.* at 3-5. Arline also provides documentary support for her attorney's fees and proposed distributions to herself and Orville's children. *Id.* at 5-6. She thus may otherwise be said to have satisfied Rule 17.1(b) ("In all such cases, such person's attorney shall file with the Clerk, as part of the record, a statement of the nature of the evidence relied upon to show liability, the elements of damage and a statement of the services rendered by counsel, the expenses incurred or to be incurred and the amount of fees requested").

In that regard, the original settlement basics consisted of an $800,000 settlement, which was 80% of the defendants' available insurance. $1,000 of that would satisfy Arline's estate claim, for which she would forego her claim for a Year's Support.[3] The $799,000 remaining amount would then be allocated to the wrongful death claim. After 40% attorney fees and expenses, there would be "Net Wrongful Death Proceeds" of $439,722.22, and thus a "Net Recovery" of $440,272.63. She proposed dividing that $440,272.63 amount by 1/3 to Arline ($146,757.55) and 2/3 to Orville's six children (hence, $48,919.19 apiece).

The adult children are not represented by counsel, but the minor children are. Doc. ## 18, 25, 27. The minors opposed Arline's disbursement motion, specifically the attorney's fees component, doc. # 25, so they negotiated it down to 25% against the minors' allocated shares. *Id.* at 2-3. The Intervenors also

---

[2] She lists all of the children: Karma Sasha-Ann Dawkins (adult), 121-31 Benton Street, Springfield Gardens, Queens, NY 11413; Sonia Perrier (adult), 4450 Wilder Ave Apt 1, Bronx, NY 10466; Shaudia Perrier (Minor); DOB: 1/16/1990; Lionel Town P.O., Jamaica, West Indies; Christina Perrier, (Minor); DOB: 12/31/1992; Lionel Town P.O., Jamaica, West Indies; Orville Perrier (adult) 17 E Stillwood, Savannah, GA; and Kurtley Perrier (Minor); DOB: 08/20/199, 21801 133rd Avenue, Jamaica, NY. Doc. # 20 at 1-2. Of the six children, only the three minors -- Shaudia, Kurtley and and Christina -- are before this Court via intervention. Doc. # 19.

[3] This was recently defined:

> [A] claim for year's support is not analogous to a tort claim where general damages can be awarded based on the enlightened consciences of impartial jurors. Nor is it a claim for loss of consortium where damages are not capable of exact pecuniary measure and are left to the enlightened conscience of impartial jurors. Rather it is a statutory claim stemming from the historical purpose: to prevent a family from being turned away houseless -- a widow and children -- and cast upon the world in their forlorn condition. The intent is to protect the family survivors from a reduction in their standard of living while the estate is being settled, at least for one year. It is a transitional allowance.

*Anderson v. Westmoreland*, ___ Ga.App.___, 2007 WL 2004419 at * 2 (7/17/07); O.C.G.A. § 53-3-7(c).

2

proposed annuity payments to the minor children. *Id.* at 3-4. This resulted in an amended motion by Arline, doc. # 26, which reflects the 25% fees, and she takes no position on the annuity payments issue. *Id.* at 2.

Under Arline's amended disbursement motion, to which the Intervenors do not object, doc. # 27, the minors would now net $63,356.06 (up from $48,919.19 apiece) while the adults would net $50,684.85 (also up from $48,919.19 apiece). No one now questions the litigation expenses or attorney's fee. But the Intervenors move the Court to direct the defendants' insurer -- Lincoln General Insurance Company ("Lincoln General") -- to place the minors' share into a specified annuity, using release language detailed in the Intervenors' 6/28/07 response at doc. # 27 exh. B.

Lincoln General objects, arguing that the minors lack standing to intervene and thus "have no legal right to dictate the terms of the settlement between [Arline] and the defendants." Doc. # 28 at 2. It just wants to pay Arline the already agreed-upon $800,000 and be done with this case. *Id.* at 2-3.[4]

A couple of points are worth reviewing here:

---

[4] It emphasizes that

> the parties to this litigation have agreed on an equitable resolution to this case and it would be fundamentally unfair to require Lincoln General to incur additional expenses associated with retracting its prior payments and re-issuing additional settlement checks, setting up and funding three (3) separate annuity funds, as well as to have its counsel prepare separate releases on behalf of each minor child.

Doc. # 28 at 3.

In a wrongful death case, the surviving spouse acts as the children's representative and owes them the duty to act prudently in asserting, prosecuting and settling the claim and to act in the utmost good faith. At the same time, an executrix of an estate occupies a fiduciary relationship toward parties having an interest in the estate; that relationship also requires the utmost good faith.

*Wynn*, 229 Ga.App. at 222 (cites omitted); *Bloodworth v. Bloodworth*, 260 Ga.App. 466, 470 (2003); ELDRIDGE'S GA. WRONGFUL DEATH ACTIONS § 3-7 (3d ed. 2007). No one here questions whether Arline has met that duty.

Pointing to that statutorily imposed duty, Lincoln General correctly notes that the minors have no standing here, *McMahan v. Koppers Co., Inc.*, 654 F.2d 380, 382 (5th Cir. 1981) (under Georgia law, district court properly refused to allow mother of decedent's alleged natural son to intervene in wrongful death action brought by widow, since natural son's interest were adequately protected by existing parties to litigation), *cited in* GA. WRONGFUL DEATH ACTIONS § 3-4, which means this Court erred in granting their motion to intervene, so it now vacates its previous Order on that score, doc. # 19.

Meanwhile, the 1/3 - 2/3 split proposed here is authorized by O.C.G.A. § 51-4-2(d)(2). And Orville's offspring have a claim against Arline if in fact she does not prudently resolve and allocate the wrongful death disbursements. *See* GA. LAW OF TORTS § 31-4 (2007) ("Thus, a parent, stepparent, or guardian who fails to prosecute a wrongful death claim properly or to account for the proceeds thereof may be subject to a claim for conversion or breach of fiduciary duty" (footnote omitted)). Since the Court has

vacated its intervention Order, the minor children are no longer a party here, so Local Rule 17.1 ("No action to which a *party* is a minor ... shall be compromised, settled, discontinued, or dismissed except after approval by the Court...." (emphasis added)) is inapplicable here.

In that there is no request, nor need demonstrated for a hearing, the Court therefore *VACATES* its intervention-grant Order (doc. # 19) and *DENIES* as moot plaintiff Arline Perrier's motion to approve settlement distribution funds. Doc. # 20. The *parties* to this case are free to settle this case (and distribute their settlement's proceeds) as they see fit. The Court can only enforce the settlement agreement reached between those parties *when* they agreed to dismiss this case. If, given this ruling, there is no disagreement between the *parties*, then there is no need to further move this Court to approve it, as the settlement is just a contract at this point.

This 27 day of July, 2007.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA